IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mary Paul,                            :
                    Petitioner        :
                                      :
        v.                            :   No. 460 C.D. 2019
                                      :
Pennsylvania Public Utility           :
Commission,                           :
                    Respondent        :   Submitted: March 17, 2023

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION BY JUDGE CEISLER                    FILED: July 25, 2023

Mary Paul petitions for review, *pro se*,[1] of the June 14, 2018 and March 14, 2019 Orders of the Pennsylvania Public Utility Commission (PUC) dismissing Ms. Paul's Formal Complaint against PECO Energy Company (PECO) for her failure to prove that PECO's installation of a smart meter at her home constituted unsafe or unreasonable service under Section 1501 of the Public Utility Code (Code), 66 Pa. C.S. § 1501.[2]  Because we conclude that Ms. Paul's issues on appeal have been resolved by the Pennsylvania Supreme Court's recent decision in *Povacz v.*

---

[1] Ms. Paul was previously represented by counsel in earlier proceedings before this Court, but she is now acting *pro se*.

[2] Section 1501 of the Code provides in relevant part:

*Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities*, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public. . . .

66 Pa. C.S. § 1501 (emphasis added).

*Pennsylvania Public Utility Commission*, 280 A.3d 975 (Pa. 2022), we affirm the PUC's Orders.

## Background

### 1. Factual and Procedural History

On April 1, 2015, Ms. Paul filed a Formal Complaint with the PUC, alleging that PECO was threatening to shut off her electric service because she refused installation of an advanced metering infrastructure meter (AMI meter or smart meter) at her home. PECO filed an Answer, averring that under Section 2807(f)(1) and (2) of the Code, 66 Pa. C.S. § 2807(f)(1) and (2), commonly known as Act 129,[3] it was required to install smart meters at the residences of its existing automated meter reading customers by the end of 2014. PECO also averred that in order to comply with Act 129 and its smart meter deployment plan filed with the PUC, it would terminate service to any customer who, after repeated requests, did not give PECO access to his or her residence to install a smart meter.

---

[3] Section 2807 of the Code was added by the Act of October 15, 2008, P.L. 1592, No. 129, and took effect on November 14, 2008. Section 2807(f)(1) and (2) of the Code provides:

**(f) Smart meter technology and time of use rates.**--

(1) Within nine months after the effective date of this paragraph, electric distribution companies [(EDCs)] shall file a smart meter technology procurement and installation plan with [the PUC] for approval. The plan shall describe the smart meter technologies the [EDC] proposes to install in accordance with paragraph (2).

(2) [*EDCs*] *shall furnish smart meter technology* as follows:

> (i) Upon request from a customer that agrees to pay the cost of the smart meter at the time of the request.
> (ii) In new building construction.
> (iii) In accordance with a depreciation schedule not to exceed 15 years.

66 Pa. C.S. § 2807(f)(1) and (2) (emphasis added).

An administrative law judge (ALJ) held a two-day evidentiary hearing in November 2016. Ms. Paul, appearing *pro se*, testified on her own behalf and presented the testimony of Hanoch Talmor, M.D., a holistic physician. PECO presented the testimony of four witnesses: Brenda Eison, PECO Customer Service and AMI Deployment Manager; Glenn Pritchard, PECO Manager, Advanced Grid Operations & Technology; Christopher Davis, Ph.D; and Mark Israel, M.D.[4] Before the ALJ, Ms. Paul asserted that: (1) PECO did not provide her reasonable notice of the replacement of her electric meter and PECO used a contractor with whom she was unfamiliar; (2) installation of a smart meter at her home would be unsafe and unreasonable; and (3) she received no written answers in response to 15 specific questions she had asked PECO about her health and safety concerns.

On June 23, 2017, the ALJ issued her Initial Decision dismissing Ms. Paul's Formal Complaint. The ALJ found that: (1) Ms. Paul failed to establish that installation of a smart meter at her home would be unreasonable or unsafe; and (2) PECO reasonably responded to her concerns and questions regarding smart meters. The ALJ further found that, even if the weight of the evidence had established that a smart meter would be harmful to Ms. Paul, PECO acted reasonably in responding to her concerns. In particular, the ALJ noted that PECO had proposed moving Ms. Paul's meter board and installing the smart meter in a remote location away from her home. Ms. Paul filed exceptions to the ALJ's ruling, to which the PUC replied.

On June 14, 2018, the PUC issued an Opinion and Order denying Ms. Paul's exceptions, adopting the ALJ's Initial Decision, and dismissing Ms. Paul's Formal Complaint. The PUC specifically found the testimony of PECO's witnesses more credible and persuasive than that of Ms. Paul's witness. The PUC explained:

---

[4] "The record in th[e ALJ] proceeding consist[ed] of a 376-page transcript and twenty-four exhibits." PUC Op., 6/14/18, at 6.

3

> We . . . agree with the ALJ that Dr. Israel's testimony and PECO's other witnesses' testimony is more credible than that of [Ms. Paul's witness,] Dr. Talmor. Most significant is the fact that Dr. Talmor's testimony is concerned about "pulsed" transmissions" as being detrimental to a person's health. However, as noted by the ALJ, according to Mr. Pritchard, the PECO smart meter system does not use pulsed transmissions. Furthermore, the smart meters used by PECO only measure consumption and do not create harmonics or the "feedback" that concerned Dr. Talmor. Furthermore, the ALJ appropriately concluded that there was no showing that the concerns Ms. Paul and Dr. Talmor have about smart meters in general pertain to the AMI meters utilized by PECO in particular.
>
> We also find Dr. Davis'[s] testimony more credible than Dr. Talmor's concerning the [electromagnetic frequency] exposure emitted by PECO's smart meters. As the ALJ explained, Dr. Talmor proposed an [electromagnetic frequency] safe level of 0.1 microwatts per square meter. This level is 100 million times the safe level established by the Federal Communications Commission[(FCC)]. Dr. Davis testified that the two radios that are employed in PECO Smart Meters are the Flexnet radio, with average emissions that are at least 7.8 million times smaller than the FCC maximum permissible exposure (MPE) and the Zigbee radio, with emissions that are at least 164 million times smaller than the FCC limit, on average. Looking at the possible peak exposure to [electromagnetic frequencies], i.e., at the moment when the meters are actually transmitting, the Flexnet level is 40 times smaller than the FCC MPE and the Zigbee level is 3800 times smaller than the FCC MPE. Dr. Davis further stated that [Ms. Paul's] exposure to the nearest neighbor's AMI meter if placed on the neighbor's closest point to Ms. Paul would be 25 times smaller than the safe level stated by Dr. Talmor.

PUC Order, 6/14/18, at 25-26 (internal citations omitted). Ultimately, the PUC concluded that Ms. Paul failed to prove that PECO violated Section 1501 of the Code or that PECO's installation of a smart meter at her home would be unsafe or unreasonable. *Id.* at 27.

4

On June 29, 2018, Ms. Paul filed a Petition for Reconsideration with the PUC, alleging, *inter alia*, that PECO had forcibly installed a smart meter at her home against her will following the PUC's June 14, 2018 Order. On July 9, 2018, PECO filed an Answer to the Petition for Reconsideration. On July 12, 2018, the PUC entered an Order granting the Petition for Reconsideration, "pending further review of, and consideration on, the merits." PUC Op., 3/14/19, at 5. On March 14, 2019, after its review of the merits, the PUC issued an Opinion and Order denying the Petition for Reconsideration.[5]

On March 19, 2019, Ms. Paul filed her *pro se* Petition for Review with this Court, seeking review of the PUC's June 14, 2018 and March 14, 2019 Orders. On appeal, Ms. Paul asserts that the PUC improperly interpreted Act 129 as mandating smart meter installation, arguing instead that Section 2807(f)(2) of Act 129 grants EDC customers an unconditional right to refuse a smart meter. Ms. Paul also asserts that PECO's electric service would not be safe or reasonable without an opt-out right for customers who fear potential health effects from smart meter electromagnetic frequency fields. Ms. Paul avers:

> The PUC has stated, and has ruled categorically that the legislative intent of Act 129 mandates universal deployment of smart meters on every Pennsylvania resident customers' home (if that Pennsylvania resident has been assigned an electric utility which services more than 100,000 customers), regardless of health or safety issues as to those customers in smart meter deployment on those customers' properties.

---

[5] In light of the PUC's express grant of reconsideration, Ms. Paul's 30-day period for filing a petition for review began to run after the entry of the PUC's final decision on reconsideration on March 14, 2019. *See* Pa.R.A.P. 1701(b)(3) and 1512(a)(1). Under Pa.R.A.P. 1701(b)(3), "[w]here a timely order of reconsideration is entered . . . , the time for filing a . . . petition for review begins to run anew after the entry of the decision on reconsideration, whether or not that decision amounts to a reaffirmation of the prior determination of the . . . government unit."

. . . .

. . . [T]his PUC interpretation of Act 129['s] legislative intent has guided all PUC formal complaint smart meter harm decisions to date, including M[]s. Paul's.

Pet. for Rev. at 3-4. In her prayer for relief, Ms. Paul asks this Court, *inter alia*, to

reverse the PUC [d]ecisions against her, and direct PECO to remove all smart meters that PECO has deployed on her property, and replace them with electromechanical analog meters. M[]s. Paul further requests that PECO be permanently enjoined from deploying a smart meter on any residence in Pennsylvania where M[]s. Paul may reside, if she should move from her current residence to another residence in the Commonwealth.

*Id.* at 7.

## 2. Recent Developments

After the filing of the parties' initial round of briefs, on January 28, 2020, this Court stayed these proceedings pending the disposition of three consolidated appeals filed by other PECO customers who asserted the same, or similar, Act 129 smart meter installation claims against PECO (*Povacz* appeals).

On October 8, 2020, an *en banc* panel of this Court affirmed in part, reversed and remanded in part, and vacated and remanded in part the PUC's Orders in the *Povacz* appeals. *See Povacz v. Pa. Pub. Util. Comm'n*, 241 A.3d 481 (Pa. Cmwlth. 2020) (*en banc*), *aff'd in part and rev'd in part*, 280 A.3d 975 (Pa. 2022). Thereafter, the parties in the *Povacz* appeals filed petitions for allowance of appeal with the Pennsylvania Supreme Court, which the Court granted on May 12, 2021.

On July 1, 2021, this Court continued the stay of the present case pending the resolution of the *Povacz* appeals. On August 16, 2022, the Supreme Court issued its decision in *Povacz*, affirming in part and reversing in part this Court's decision. We address the Supreme Court's specific rulings in *Povacz* below.

6

On October 5, 2022, this Court lifted the stay in this matter and directed the parties to file supplemental briefs addressing the *Povacz* decision, and specifically addressing its impact on the issues raised in Ms. Paul's Petition for Review. The parties have now filed their supplemental briefs with this Court.[6]

### 3. Supreme Court's *Povacz* Decision

In *Povacz*, the Supreme Court first held that, contrary to the petitioners' assertions, Act 129 mandates the system-wide installation of smart meters, concluding: "Our comprehensive reading of Act 129 leads us to conclude that the statute is not ambiguous and that *Section 2807(f)(2)* [*of the Code*] *imposes a mandate on EDCs to furnish smart meter technology to all electric customers within an electric distribution service area, regardless of a customer's preference*." *Id.* at 992 (emphasis added). The Supreme Court explained its reasoning as follows:

> Section 2806.1 [of the Code] expresses the General Assembly's intent to create the [energy efficiency and conservation (EE&C)] program to include electric customers; hence the need for a plan based on a fixed existing customer base. If . . . retail customers could choose the type of EE&C measures they prefer, including the type of electric meter, then EDCs could not comply with the requirements of the EE&C program or their individual PUC-approved plans, and the General Assembly's

---

[6] In an appeal from a decision of the PUC, our "review is limited to determining whether substantial evidence supports the necessary findings of fact, whether [the] PUC erred as a matter of law, and whether constitutional rights were violated." *Retail Energy Supply Ass'n v. Pa. Pub. Util. Comm'n*, 185 A.3d 1206, 1220 (Pa. Cmwlth. 2018). "We defer to [the] PUC's interpretation of the . . . Code and its own regulations unless [its] interpretations are clearly erroneous." *Id.*

On appeal, Ms. Paul does not specifically challenge the PUC's factual findings or its determination that she failed to prove by a preponderance of the evidence that the installation of a smart meter at her home was unreasonable or unsafe. Rather, she challenges the PUC's interpretation of the statutory language of Act 129 and its legislative intent. *See* Paul Am. Brief at 4, 31; Paul Suppl. Br. at 1-3. Because Ms. Paul's appeal presents pure questions of law, "'our standard of review is *de novo* and our scope of review is plenary.'" *Retail Energy*, 185 A.3d at 1220 (citation omitted).

7

goal of reducing energy consumption and demand in Pennsylvania would not be realized.

. . . .

In short, *the authority to select and install a certain type of electric meter rests solely with EDCs, . . . not the customer.* In compliance with Act 129, [the EDC] selected smart meters. Thus, [*the c*]*ustomers' suggestion that the installation of smart meters is subject to customer choice is not supported by the statute.*

The PUC also directed EDCs to "file a smart meter technology procurement and installation plan" . . . "[w]ithin nine months after the effective date" of Act 129, i.e., by September 14, 2009, for approval by the PUC. It is apparent that in order to develop and file its [p]rocurement and [i]nstallation plan, an EDC would need to rely on its existing customer base, not parts of it.

*Id.* at 993-94. Therefore, the *Povacz* Court held that, when read in context, Act 129 imposes a mandate on EDCs to furnish smart meters to "the universe of customers considered in the procurement and installation plan." *Id.* at 995. Importantly, the Court concluded: "Considering the overall goal of Act 129 to promote energy efficiency and conservation in Pennsylvania, *the plain language of Section 2807(f)(2) mandates the system-wide installation of smart meter technology, including smart meters, with no opt-out provision.*" *Id.* at 998 (emphasis added).

Next, the Supreme Court considered the applicable burden of proof for a customer who seeks to challenge an EDC's smart meter installation, holding:

A customer seeking affirmative relief from the PUC *must prove by a preponderance of the evidence that the named utility was responsible or accountable for the problem described in the complaint and that the offense was a violation of the Code, a PUC regulation or [o]rder, or a violation of a PUC-approved tariff.*

*Id.* at 999 (emphasis added). The Court noted, however:

Although Act 129 does not provide an electric customer with the right to opt-out of the installation of a smart meter at [his or her] residence, [*a customer*] *may file a complaint raising a claim that installation of a smart meter violates Section 1501 of the Code.*

. . . .

To carry [his or her] burden of proof on a Section 1501 claim, *a smart meter challenger may be required to present medical documentation and/or expert testimony demonstrating that the furnishing of a smart meter constitutes unsafe or unreasonable service in violation of Section 1501 under the circumstances presented.*

*Id.* at 999-1000 (emphasis added). The Supreme Court clarified that a customer can request a reasonable accommodation only after proving a violation of Section 1501, and that any accommodation is limited by Act 129 and the terms of the EDC's tariff. *Id.* at 1014.

At the conclusion of its Opinion, the Supreme Court summarized its holdings as follows:

> *Act 129 is mandatory, requiring the system-wide installation of smart meter technology by EDCs, including smart meters.* Although electric customers are not entitled to opt out of having a smart meter installed at their home, *the PUC is authorized to determine and prescribe a remedy to individual customers who establish a violation of Section 1501* [*of the Code*] *by a preponderance of the evidence that furnishing smart meter technology to them is unsafe or unreasonable.* Reference to a preponderance of the evidence burden of proof and a "conclusive causal connection" evidentiary standard to assess whether expert evidence meets that burden is not inconsistent. *The burden for proving a safety or reasonableness violation under Section 1501 is the same, where the challenge is based on the effect on the health of the customer.*
>
> Accordingly, we reverse the Commonwealth Court's ruling that Act 129 does not mandate the installation of smart meters. We affirm

9

the Commonwealth Court's conclusion that the PUC did not err in finding that [the c]ustomers failed to meet their burden of proving, by a preponderance of the evidence, a conclusive causal connection between [radiofrequency] emissions from smart meters and adverse human health effects. We reverse the Commonwealth Court's remand to the PUC for consideration of whether [the c]ustomers established that smart meter service is unreasonable under Section 1501. The PUC has already made the determination that smart meter service is not unreasonable based on the same evidence supporting the finding that no safety violation was proven.

*Id.* (emphasis added).

### Issues

Ms. Paul raises the following issues on appeal:

(1) Did the PUC violate the Statutory Construction Act [of 1972] when it construed Section 2807[](f)(2) of [Act 129] as requiring the installation of smart meters by an [EDC] for all of its existing customers, notwithstanding the express objection, or refusal to consent to such installation, by one (or more) of its customers?

(2) Did the PUC commit an error of law when it used the criteria of [Section 1501 of the Code] to interpret the language of [Section] 2807[](f)(2) [of Act 129]?

(3) Does the construction of Act 129 by the PUC constitute a clear, plain, and palpable violation of the individual rights expressed in the Pennsylvania Constitution as provided in Article I, Section 1, Inherent Rights of Mankind, and in Article I, Section 25, Reservation of Power in People?

(4) Does Act 129 authorize the PUC, or an [EDC], to force a smart meter upon customers who reject[] said installation due to fears of, and perceived threats, to their personal harm in [their] home[s]?

(5) Does an [EDC's] customer, who has a disability that is adversely affected by electromagnetic emissions, have a right to refuse the installation of a smart meter on his/her home?

Paul Am. Brief at 4 (italics and underlining removed).

<u>Analysis</u>

**1. Statutory Interpretation of Act 129**

In issues (1), (2), (4), and (5) of her amended brief, Ms. Paul challenges the PUC's interpretation of the statutory language of Act 129 and its legislative intent. In her supplemental brief filed in response to *Povacz*, she reiterates many of the same arguments she asserts in her Petition for Review and amended brief.[7] Ms. Paul maintains that the PUC improperly interpreted Act 129 as mandating smart meter installation for all existing customers. Paul Suppl. Br. at 2-3. She also maintains that the language of Act 129 and its legislative history establish that EDC customers have the right to opt out of smart meter installation due to concerns for their health and safety. *Id.* at 1-2.

We conclude that all of Ms. Paul's arguments pertaining to the PUC's interpretation of Act 129 are now foreclosed by the Supreme Court's decision in *Povacz*. In *Povacz*, the Supreme Court held, after engaging in an extensive analysis of the statutory language and legislative purpose of Act 129, that "*the plain language of Section 2807(f)(2) [of Act 129] mandates the system-wide installation of smart meter technology, including smart meters, with no opt-out provision.*" 280 A.3d at 998 (emphasis added). The Court further concluded that "[the c]ustomers' suggestion that the installation of smart meters is subject to customer choice is *not supported by the statute.*" *Id.* at 993 (emphasis added). Thus, the Supreme Court rejected the central premise of Ms. Paul's present appeal – that an EDC customer

---

[7] Despite this Court's explicit directive to address *Povacz* and its impact on the issues in this case, Ms. Paul includes only two sentences about *Povacz* in her supplemental brief, asserting: "The Supreme Court's [d]ecision sounded exactly like the PUC and the [u]tilities wrote it for them. The Justices themselves have failed their duties to uphold the Constitution and have therefore violated their Oaths of Office." Paul Suppl. Br. at 1.

11

has an unqualified right to refuse the installation of a smart meter and demand another type of meter.

Ms. Paul also asserts that "[t]he PUC and the [u]tilities should have to prove [that smart meters] are safe for everyone." Paul Suppl. Br. at 2. However, the *Povacz* Court held that *the customer*, not the EDC, bears the burden of proof in a smart meter installation challenge. Specifically, the Court held that the customer "must prove by a preponderance of the evidence that the named utility was responsible or accountable for the problem described in the complaint and that the offense was a violation of the Code, a PUC regulation or [o]rder, or a violation of a PUC-approved tariff." *Povacz*, 280 A.3d at 999. This burden "requires a customer to prove that a service or facility is – more likely than not – the cause of the problem described in [his or her] complaint." *Id.* at 1006; *see id.* at 1014 (affirming this Court's holding that the customers have the "burden of proving, by a preponderance of the evidence, a conclusive causal connection between [radiofrequency] emissions from smart meters and adverse human health effects").[8]

_____

[8] The Supreme Court described the preponderance of the evidence burden in more detail as follows:

> First, a customer must present expert opinion rendered to a reasonable degree of scientific certainty that smart meters emit [radiofrequencies] and that [radiofrequency] emissions cause adverse health effects and, second, expert opinion rendered to a reasonable degree of medical certainty that [radiofrequency] emissions from the smart meters, either alone or cumulative to other sources of [radiofrequency] emissions, caused them harm. Once the customer produces such evidence, the utility may then defend by providing scientific and/or medical expert testimony that, within a reasonable degree of certainty, the [radiofrequency] emissions from smart meters did not cause the alleged harm. The fact[]finder must then weigh the evidence and decide whether it is more likely than not that the smart meter causes harm to the customer.

*Povacz*, 280 A.3d at 1006 (internal citation omitted).

12

Ms. Paul also argues that the "conclusive causal connection" standard that the PUC used in this case creates an "impossible" burden of proof "when it comes to the internal workings of the human body." Paul Suppl. Br. at 2. However, the *Povacz* Court confirmed that "conclusive causal connection" is the correct standard for assessing scientific evidence proffered to establish the safety of a service or facility. 280 A.3d at 1006-07. The Court explained that "'[c]onclusive causal connection' means that the proffered evidence must support the conclusion that a causal connection existed between a service or facility and the alleged harm." *Id.* at 1006. With regard to a customer's claim of potential harm from smart meter emissions, the Court clarified:

> The generic versus specific nature of a claim *does not diminish the need to prove, by a preponderance of the evidence – with expert opinion within a reasonable degree of certainty – that the service or facility is unsafe and that a causal connection exists between the allegedly unsafe service or facility and harm, either to the public at large or to specific individuals.*

*Id.* at 1007 (emphasis added).

In sum, the *Povacz* Court upheld the PUC's interpretation of Act 129 as mandating the system-wide installation of smart meters, with no customer opt-out option, and confirmed that the customer bears the burden of proof in a smart meter installation challenge. Therefore, in light of *Povacz*, we reject Ms. Paul's contrary interpretation of Act 129.

## 2. Constitutional Claim

In issue (3) of her amended brief, Ms. Paul asserts a claim under Article I of the Pennsylvania Constitution. Specifically, Ms. Paul contends that the PUC's interpretation of Act 129 violates her "constitutional right to live her life as she chooses" because the PUC and PECO are forcing her to endure exposure to smart

13

meter radiofrequency emissions against her will. Paul Am. Br. at 26-27. She also baldly asserts that her "federal civil rights [as a] ratepayer[]" have been violated. *Id.* at 28. However, Ms. Paul did not raise these issues in her Petition for Review. *See Oliver v. Unemployment Comp. Bd. of Rev.*, 29 A.3d 95, 98 (Pa. Cmwlth. 2011) (stating that where claims that constitutional rights were violated are not raised in a petition for review, they are waived). Moreover, aside from quoting provisions of the Pennsylvania Constitution, Ms. Paul fails to develop these claims with any citation to relevant legal authority, and she completely fails to address them in her supplemental brief. *See Com. v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."). Therefore, we conclude that Ms. Paul has waived these claims.[9]

### 3. Additional Claims

Finally, in her supplemental brief, Ms. Paul attempts to assert new claims against PECO that she did not raise before the PUC, including that "PECO and other Pennsylvania utilities accepted [f]ederal money for the Recovery Act Smart Grid Investment Grants," which "subjects the utility companies to [f]ederal statutory and regulatory requirements and policies." Paul Suppl. Br. at 4. Ms. Paul also asks this Court to "[o]rder PECO to write a customer service policy to afford the disabled

---

[9] In any event, in *Povacz*, this Court rejected a similar constitutional claim, asserted under the Fourteenth Amendment to the United States Constitution, that "[t]he PUC's interpretation of . . . Act 129[] as precluding opt-outs from installation of wireless smart meters violates [the petitioners'] constitutional liberty interest in their personal bodily integrity." *Povacz*, 241 A.3d at 484-85. We held that Act 129's smart meter mandate does not constitute an arbitrary deprivation of a recognized liberty or property interest. *Id.* at 488. In affirming in part and reversing in part this Court's decision, the Supreme Court expressly "declined allocatur as to any constitutional claims." *Povacz*, 280 A.3d at 985 n.8.

14

people of this state a way to continue to live peacefully." *Id.* However, this Court may not consider issues on appeal that were not raised before the administrative agency in the first instance. *See* Pa.R.A.P. 1551(a) (stating that "[o]nly questions raised before the government unit shall be heard or considered" in an appeal from a government agency decision).[10]

### Conclusion

Accordingly, in light of the Supreme Court's holdings in *Povacz*, which are dispositive of Ms. Paul's issues on appeal, we affirm the PUC's Orders.

_____
ELLEN CEISLER, Judge

---

[10] Ms. Paul also appends to her supplemental brief several exhibits that were not part of the record in the proceedings before the PUC; it is well settled, however, that we may not consider such extra-record evidence on appeal. *See Anam v. Workmen's Comp. Appeal Bd. (Hahnemann)*, 537 A.2d 932, 934 (Pa. Cmwlth. 1988); *see also* Pa.R.A.P. 1951(a) (in an appeal from a government agency, the record on appeal consists of the order sought to be reviewed, the findings on which such order is based, and the pleadings, evidence, and proceedings before the agency).

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mary Paul,                                    :
                    Petitioner              :
                                              :
      v.                                      :   No. 460 C.D. 2019
                                              :
Pennsylvania Public Utility                   :
Commission,                                   :
                    Respondent              :

# **O R D E R**

AND NOW, this 25th day of July, 2023, the Orders of the Pennsylvania Public Utility Commission, dated June 14, 2018 and March 14, 2019, are hereby AFFIRMED.

 

 

_____
ELLEN CEISLER, Judge